IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| VICKIE DAVIS, | ) | CASE NO. 1:19-CV-02045 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

Vickie Davis seeks disability insurance and supplemental security income benefits because of multiple physical impairments. The Commissioner found her capable of performing her past relevant work as a phlebotomist[1] and denied her applications.[2] Following the hearing Davis submitted treatment records generated shortly after the ALJ's decision to the Appeals Council in support of a request for remand under Sentence Six of 42 U.S.C. § 405(g).[3] The Appeals Council denied that request.[4]

Because medical records submitted to the Appeals Council are new and material, I reverse the Commissioner's decision and remand this case for consideration of the new and material evidence.[5]

---

[1] Tr. 101.
[2] Id. at 102.
[3] Tr. 8-77.
[4] Tr. 2.
[5] The parties have consented to my jurisdiction. ECF #19

1

I.

This case presents two issues for decision:

- The ALJ found that Davis had not supported her claim that her use of a cane was medically necessary because the record did not contain medical documentation of the need for such a device. Does substantial evidence support that finding?
- Shortly after the ALJ's decision, Davis's treating physician removed surgical hardware in her foot and ankle to relieve her pain. Is this new evidence new and material, justifying a remand under Sentence Six of 42 U.S.C. § 405(g)?

A.

At Step 2 the ALJ found that Davis had severe impairments of "traumatic arthritis of the left ankle status post fracture and open reduction and internal fixation" and "trochanteric bursitis of the left hip".[6] Despite evidence through treatment notes from 2016 through 2018 of pain in her left lower extremities,[7] the only limitation included in the Step 4 RFC finding was "she can occasionally push, pull, and operate foot controls with the left lower extremity."[8]

The transcript also contains multiple references to Davis's use of a cane to ambulate. These appear in the treatment notes[9] and in her hearing testimony.[10] She testified that her physical therapist prescribed the cane three and a half years before her hearing.[11]

---

[6] Tr. 95
[7] E.g., Tr. 514, 523, 532, 535-36, 1032-39, 1049,1052.
[8] Tr. 97.
[9] Tr. 524, 1035-37, 1242.
[10] Tr. 132.
[11] Id.

The ALJ did not include the need to use a cane to ambulate in the RFC. The Commissioner argues that the exclusion of the need for a cane was appropriate because Davis did not present medical documentation of that need, describing the circumstances for which it is needed, as required by Social Security Ruling 96-9p.[12]

Davis counters that the ALJ did not dispute her testimony that a physical therapist prescribed the cane and incorrectly rationalized the exclusion of her need for a cane based on isolated references in the medical record to a "normal gait."

But Davis's argument runs counter to this Court's recent decision in *Wright v. Commissioner of Social Security*.[13] In that case the claimant had a physician's prescription for a cane that merely stated "cane for ambulation."[14] District Judge Barker applied Social Security ruling 96-9p in upholding the ALJ's decision to exclude the need for a cane from the RFC because the prescription failed to describe the circumstances for which it is needed.[15] Here the record contains no written prescription, and there is no discussion in the treatment notes describing the circumstances for which the cane was needed. The ALJ's exclusion of the need for a cane from the RFC is supportable under the holding and reasoning in *Wright* and the authorities cited therein.

---

[12] 1996WL374185, *7 (S.S.A. July2, 1996).
[13] Case. No. 1:18cv1724, 2019 WL 3729264 (N.D.Ohio Aug. 8, 2019).
[14] Id. at *3.
[15] Id.

B.

The ALJ found Davis capable of light work.[16] Light work requires standing or walking six hours in an eight hour work day.[17] Given Davis's severe impairment of her left lower extremity, could she meet that requirement? Based on the evidence of record before the ALJ's decision, the ALJ concluded "yes." As support for this finding, the ALJ pointed to several isolated references that Davis walked with a normal gait[18] and the opinions of the state agency reviewing physicians.[19] These opinions pre-dated the ALJ's decision by two and a half and three years respectively.[20] Nevertheless, the ALJ gave these opinions "considerable but not great weight," finding that "updated evidence established that the combination of claimant's conditions, including ankle and fracture dysfunction and edema, necessitate further postural and foot control restrictions."[21].

The ALJ did not explain how this updated evidence effected Davis's ability to stand or walk. She testified at the hearing that she can't stand very long and can't put pressure on her ankle since her second surgery.[22] When asked how long she could stand, she replied no more than a half hour.[23]

---

[16] Tr. 97.
[17] Titles II & Xvi: Determining Capability to Do Other Work–the Med.–Vocational Rules of Appendix 2, SSR 83–10 at *5–6, 1983 WL 31251 (S.S.A. 1983).
[18] Tr. 99.
[19] Tr. 100
[20] Tr. 201-13 (initial, dated September 28, 2016), and 229-40 (reconsideration, dated January 12, 2017). The ALJ issued his decision on February 28, 2019.
[21] Tr. 100.
[22] Tr. 131.
[23] Id.

4

Under the extremely deferential substantial evidence standard, the correctness of the ALJ's decision to find Davis capable of standing or walking six hours in an eight hour day survives a close call. But the story does not end there. Within a month after the ALJ's decision, Davis was examined by Dr. Brett McCoy, an orthopedic surgeon, who concluded that she should have the surgical hardware in her left foot and ankle removed to relieve her pain.[24]. Subsequently she had the surgical hardware removed.[25] Davis presented this evidence to the Appeals Council, which denied her request for a remand to consider that evidence.[26]

To support a remand for consideration of additional medical evidence, that evidence must be new and material, and good cause must exist for failure to incorporate the evidence in to the record before the ALJ's decision.[27] Davis could not have presented the evidence before the ALJ's decision because Dr. McCoy's examination findings and the subsequent surgery post-date that decision. To be material, the evidence must show that "there was a reasonable probability that the (Commissioner) would have reached a different disposition . . . if presented with the new evidence."[28]

Davis has met her burden as to these elements. As discussed above, the decision was a close call given her unequivocal testimony at the hearing and the ALJ's acknowledgment that the state agency reviewing physicians had overstated her capabilities

---

[24] Tr. 19.
[25] Tr. 76-77.
[26] Tr. 2.
[27] *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).
[28] *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

5

in light of updated evidence of an ankle fracture dysfunction and edema. The new evidence, for the first time, attributes her pain to surgical hardware still implanted in her ankle and foot and recommended surgery to remove that hardware, which Davis did undergo. In light of this evidence, I conclude that there exists a reasonable probability that the Commissioner would have reached a different decision if presented with this new evidence.

## II.

A Sentence Six remand is, therefore, appropriate to consider the new evidence presented to the Appeals Council.[29] The case in remanded for reconsideration of Davis's RFC in light of the that evidence.

IT IS SO ORDERED.

Dated: September 30, 2020               s/William H. Baughman Jr.
                                        United States Magistrate Judge

---

[29] Should the Commissioner conclude on remand that Davis could not stand or walk for six hours in an eight hour work day, she would be limited to sedentary work and "grid out" under the medical-vocational guidelines given her age. Tr. at 179.